**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT LOUISIANA**

| | | |
|---|---|---|
| **INGRAM BARGE COMPANY LLC** | * | **CIVIL ACTION NO.:** |
| | * | |
| **plaintiff,** | * | **JUDGE:** |
| | * | |
| **versus** | * | **MAGISTRATE:** |
| | * | |
| **HAMM'S FRONTIER MARINE, LLC** | * | **SECTION:** |
| | * | |
| **defendant** | * | |
| | * | |

## COMPLAINT FOR DECLARATORY JUDGMENT

**NOW INTO COURT**, through undersigned counsel, comes Ingram Barge Company LLC, who files this Complaint for Declaratory Judgment against Hamm's Frontier Marine, LLC, and avers as follows:

1.

Plaintiff herein is Ingram Barge Company LLC ("Ingram"), a Tennessee limited liability company.

2.

Made defendant herein is Hamm's Frontier Marine, LLC ("Hamm's Marine"), an Illinois limited liability company.

3.

This action is filed under the Federal Declaratory Judgment Act, 28 U.S.C. §2201 and 46 U.S.C. §31343(c)(2) which states that "[t]he district courts of the United States shall have jurisdiction over a civil action in Admiralty to declare that a vessel is not subject to a lien claimed under subsection (b) of this section, or that the vessel is not subject to the notice of claim of lien or both, regardless of the amount in controversy or the citizenship of the parties."

4.

This is a case relating to a maritime lien filed under 46 U.S.C. §31343, and thus this case comes within federal question jurisdiction, the admiralty and maritime jurisdiction of this court pursuant to 28 USC §1333 and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

5.

Plaintiff is now, and was at all relevant times, the owner of the vessel the barge ING2110, official no. 1040942 (the "Vessel").

6.

The Vessel is currently located within the jurisdiction of this Court and therefore venue is proper under 46 U.S.C. §31343.

7.

This action is commenced to quiet title to the Vessel and extinguish a maritime lien asserted on the Vessel by Hamm's Marine.

**FACTUAL BACKGROUND**

8.

Ingram is an inland tug and barge company, which transports cargo via barges for its customers.

9.

In 2022 and 2023, Ingram entered into two transportation agreements with Rigid Constructors, LLC ("Rigid") whereby Ingram agreed to transport rip rap and #4 limestone cargos from a quarry in Missouri to Louisiana aboard barges owned by Ingram.

10.

Ingram and Rigid entered into an agreement for the transportation of rip rap with an effective date of December 1, 2022, and entitled "Loading and Transportation Agreement," Carrier's Agreement No. 113986-30511 ("First Transportation Agreement"). The First Transportation Agreement is attached hereto as **Exhibit A.**

11.

Ingram and Rigid entered into a second agreement for the transportation of #4 limestone with an effective date of February 1, 2023, entitled "Dry Cargo Transportation Agreement," Agreement No. 114864-31841 ("Second Transportation Agreement"). The Second Transportation Agreement is attached hereto as **Exhibit B**. (The First Transportation Agreement and Second Transportation Agreement are collectively referred to as the "Rigid Contracts").

12.

Rigid purchased the rip rap and #4 limestone cargos from The Southern Stone Company ("Southern Stone") which cargo was to be transported on barges by Ingram pursuant to the Rigid Contracts.

13.

Southern Stone produces aggregates for clients all over the United States from its quarry in Jackson, Missouri and has relationships with several transportation companies to facilitate transportation of product from its quarry to project sites. *See* *https://www.southernstoneco.com/*

14.

Pursuant to Southern Stone's agreement with Rigid, Southern Stone was required to load the cargo at Southern Stone's quarry in Missouri and shift the Ingram barges as necessary to facilitate the loading at the quarry in Missouri.

15.

Under the Rigid Contracts, any barge shifting work at the port of loading was for the account of Rigid, not Ingram. *See* Part I Section 16 and Part II Section 27 of the First Transportation Agreement, **Exhibit A**; and Part II Section 3.3 of the Second Transportation Agreement, **Exhibit B.**

16.

The Rigid Contracts did not appoint any person or entity to act as an agent for Ingram or the barges used to transport the cargo.

17.

Southern Stone contracted with Stagg Marine, Inc. ("Stagg Marine") to perform the shifting work at the loading port (Southern Stone's quarry) on Southern Stone's behalf.

18.

Stagg Marine in turn sub-contracted its portion of this work to Hamm's Marine.

19.

The diagram below illustrates the relationships described above:




20.

Hamm's Marine alleges it provided barge shifting services to the Vessel on February 24, 2023.[1]

21.

Hamm's Marine sent invoices purportedly covering such shifting work to Stagg Marine, but according to Hamm's Marine Stagg Marine did not pay those invoices.

---

[1] While the Notice of Claim of Lien states that the lien was established on February 24, 2023, the CAPT TONY ICE vessel logs indicate that vessel shifted the ING 2110 on February 25, 2023.

22.

On May 13, 2024, Hamm's Marine recorded a lien on the Vessel with the U.S. Coast Guard in the Vessel's registry in an amount totaling $5,032.00.

23.

The Notice of Claim of Lien is recorded in the Vessel's registry Doc. #29, Batch #131335500. The Notice of Claim of Lien is Attached hereto as **Exhibit C.** The General Index of Abstract of Title showing the lien is attached hereto as **Exhibit D**.[2]

**The Commercial Instruments and Maritime Lien Act**

24.

Hamm's Marine alleges it has a lien on the Vessel for the provision of necessaries pursuant to the Commercial Instruments and Maritime Lien Act, 46 U.S.C. § 31342 ("CIMLA").

25.

To be entitled to a lien for necessaries under CIMLA, the entity must prove that (1) it provided a necessary, (2) the necessary was provided to a particular vessel, and (3) the necessary was provided "on order of the owner or a person authorized by the owner." *Id.*

26.

In addition, if it is established that the necessaries were furnished based on the credit of the contracting party, not the vessel, no maritime lien can attach.

27.

The provision of the barge shifting was not a "necessary" under CIMLA because it was done for the benefit of Southern Stone and/or Rigid, not the Vessel itself, and thus Hamm's Marine is not entitled to a lien under CIMLA.

[2] The Abstract of Title appears to, in error have recorded a second lien, and recorded the liens in the wrong amount.

28.

Under CIMLA, the following persons are "presumed to have authority to procure necessaries for the vessel:

**(1)** the owner;

**(2)** the master;

**(3)** a person entrusted with the management of the vessel at the port of supply; or

**(4)** an officer or agent appointed by—

**(A)** the owner;

**(B)** a charterer;

**(C)** an owner pro hac vice; or

**(D)** an agreed buyer in possession of the vessel." 46 U.S.C. §31341.

29.

Hamm's Marine did not perform the shifting work on behalf of one of the people presumed to have authority under 46 U.S.C. §31343.

30.

Hamm's Marine performed the work at the request of Stagg Marine.

31.

Stagg Marine is not one of the people presumed to have authority under 46 U.S.C. §31343 and Stagg Marine did not have actual authority to act on behalf of the Vessel.

32.

Stagg Marine hired Hamm's Marine to fulfill Stagg Marine's contract with Southern Stone.

33.

Southern Stone is not one of the people presumed to have authority under 46 U.S.C. §31343 and Southern Stone did not have actual authority to act on behalf of the Vessel.

34.

Southern Stone hired Stagg Marine to fulfill Southern Stone's contract with Rigid.

35.

Ingram did not contract for or direct that the shifting work be performed by Hamm's Marine.

36.

Thus, under the controlling law, *Valero Marketing & Supply Co. v. M/V ALMI SUN*, 893 F.3d 290 (5th Cir. 2018) and *Lake Charles Stevedores, Inc. v. Professor VLADAMIR POPOV*, 199 F.3d 220 (5th Cir. 1999), Hamm's Marine is not entitled to a maritime lien on the Vessel because it did not provide the alleged necessary "on order of the owner."

37.

In addition, and in the alternative, Hamm's Marine did not rely on the credit of the Vessel in performing such work, but relied on the credit of Stagg Marine.

38.

In addition, to be entitled to a maritime lien under CIMLA, Hamm's Marine must prove that the necessaries were provided to a specific vessel, and not just provided "in bulk" to an unspecified vessel or group of vessels.

39.

Here, the alleged "necessaries" (to the extent the shifting work was a necessary) were not provided to a specific vessel as required by CIMLA to create a maritime lien. Rather, Hamm's Marine's shifting work was provided to Stagg Marine in bulk as set forth below.

40.

Hamm's Marine entered into a Towing Service Agreement dated February 6, 2023, with Stagg Marine. The Towing Service Agreement is attached hereto as **Exhibit E.**

41.

The Towing Service Agreement provided that Hamm's Marine (designated as Contractor) would provide the M/V CAPT TONY ICE to Stagg Marine (designated as Client) to "work with barges at 71 mm quarry as directed. Shift loads and empties. Transport loads and empties to and from waterfront cape fleet 51 mm." **Exhibit E.**

42.

Hamm's Marine agreed to provide these services in exchange for a "daily rental rate" of $6,000.00 per day. **Exhibit E.**

43.

The Hamm's Marine/Stagg Marine charter was a blanket agreement for Hamm's Marine to provide barge shifting work to any barges in the Southern Stone quarry and did not provide that it was specifically to shift the Vessel.

44.

The work of the CAPT TONY ICE was <u>not</u> done exclusively for the Vessel or for the Ingram vessels used under the Rigid Contracts. Rather, the work was contracted and done for the fleet at large, including assisting vessels other than the Vessel and the other Ingram barges.

45.

The invoices prepared by Hamm's Marine were directed to Stagg Marine for the day rate of $6,000 for the CAPT TONY ICE. The day rate was to be paid regardless of whether any shifting work actually occurred.

46.

Hamm's issued invoices to Stagg Marine for "crewing and Lease of M/V Capt Tony Ice" on a weekly basis in the amount of "7 days @ $6,000 Total: $42,000.00." The invoices to Stagg Marine do not specify that they were for the shifting of particular barges, let alone identify the particular barge at issue here. See Invoices, attached hereto as **Exhibit F.**

47.

The Hamm's Marine Invoices were not issued to Vessel, Rigid, Southern Stone or Ingram. *See* **Exhibit F.**

48.

Even though it was apparently possible to itemize the work performed for particular vessels, the fact that the work of the CAPT TONY ICE was provided generally to Stagg Marine, and not exclusively for the Vessel or the Ingram vessels, is dispositive that the necessaries were not provided "to a particular vessel" as required to obtain a lien.

49.

The fact that the invoices were not itemized by individual barge or by group of barges for specific instances of shifting work likewise shows that the shifting work was done based on Stagg Marine's credit, not the credit of the Vessel.

50.

Because the work was not performed in reliance on the credit of the Vessel, and was not provided to a specific vessel, Hamm's Marine is not entitled to a lien under CIMLA. *See Maritrend, Inc. v. Serac & Co. (Shipping) Ltd.*, 348 F.3d 469 (5th Cir. 2003); *Silver Star Enterprises, Inc. v. Saramacca MV*, 82 F.3d 666 (5th Cir. 1996).

51.

No other law or statute allows Hamm's Marine to assert a maritime lien.

52.

Ingram made amicable demand on Hamm's Marine to remove the lien in June of 2024. Despite such amicable demand, Hamm's Marine did not remove the lien.

53.

Ingram made final demand to Hamm's Marine via letter to counsel for Hamm's Marine Dated January 13, 2025. Despite receipt of this letter, and Hamm's Marine's awareness of the relevant law, Hamm's Marine refused in bad faith and without justification to release the liens. *See* **Exhibit G**, January 13, 2025, Letter to Hamm's Marine.

**REQUEST FOR RELIEF**

54.

Under 46 U.S.C. §31343, the District Courts have jurisdiction over a civil action in admiralty to declare that a vessel is not subject to a claimed lien.

55.

Under 46 U.S.C. § 31341, Hamm's Marine is not entitled to a maritime lien on the Vessel because:

(1) Hamm's Marine did not provide a "necessary," under CIMLA to the Vessel because the shifting work provided no benefit to the Vessel itself, only to Southern Stone; and/or

(2) Hamm's Marine did not perform the work on order of a person authorized by the owner. Stagg Marine is not a person authorized by the owner: it is not the owner, master, person entrusted with the management of the Vessel at the port of supply of the Vessel nor is Stagg Marine an officer or agent appointed by the owner, charterer, owner pro hac vice, or buyer in possession of the Vessel. Rather, Hamm's Marine is a sub-contractor of the seller of the cargo and is not a person authorized to create a lien; and/or

(3) Hamm's Marine did not rely on the credit of the Vessel in performing its work. Rather, the contract between Hamm's Marine and Stagg Marine shows that Hamm's Marine relied on the credit of Stagg Marine for payment of this service contract, not on the credit of the Vessel for a particular move; and/or

(4) Hamm's Marine did not provide the shifting services to a particular vessel, rather it performed the shifting work pursuant to a general contract with Stagg Marine to perform work in the quarry at large.

56.

For these reasons, the Court should grant a declaratory judgment finding that Hamm's Marine's does not have a valid lien under CIMLA; and directing the U.S. Coast Guard to strike said lien from the Vessel's record.

57.

Ingram is also entitled to an award of costs and attorneys' fees arising out of this dispute under 46 USC 31343(c)(2). An award of costs and fees is appropriate here where the law clearly does not permit the liens, and plaintiff has attempted to amicably resolve this dispute for over eight months before bringing this declaratory judgment action.

**WHEREFORE**, Ingram Barge Company LLC respectfully requests that this Honorable Court enter an order declaring that Hamm's Frontier Marine's lien on the ING2110 is invalid, and that the U.S. Coast Guard shall remove the Lien from the registry of the ING2110, for costs and attorneys' fees, and for all other relief as the justice of the cause may necessitate.

Respectfully Submitted,

*s/David L. Reisman*

David L. Reisman (Bar No. 21833)
Elizabeth B. McIntosh (Bar No. 36575)
Raymond T. Waid (Bar No. 31351)
**LISKOW & LEWIS**
701 Poydras Street, Suite 5000
New Orleans, LA 70139
dreisman@liskow.com
ebmcintosh@liskow.com
rwaid@liskow.com
Telephone: (504) 581-7979
Facsimile: (504) 556-4108
*Attorneys for Hamm's Marine LLC*